189 N.J. Super. 485 (1983)
460 A.2d 716
JOSH LAWRENCE PETTIFORD, AN INFANT BY HIS GUARDIAN AD LITEM, CLARENCE PETTIFORD; CLARENCE PETTIFORD INDIVIDUALLY; AND DAPHNE L. PETTIFORD, PLAINTIFFS,
v.
HERBERT ESKWITT, DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
Decided May 2, 1983.
*486 Benjamin Levine for plaintiffs.
Richard Brennan for defendant (Shanley & Fisher, attorneys).
SIMPSON, A.J.S.C.
In this R. 1:21-7(f) application, plaintiff's counsel seeks an increased attorney's fee of 20% of the net aggregate recovery *487 over $250,000 in a medical malpractice action, instead of the 10% allowable under R. 1:21-7(c)(6). For the reasons to be stated, the request is approved.
On April 25, 1978 the parents of the infant plaintiff signed a standard New York one-third contingent fee retainer agreement with a New York law firm. The case was referred to present New Jersey counsel, who instituted suit on behalf of the parents and child on February 4, 1980. The child has severe neurological impairment which plaintiffs contend was partially caused by defendant's deviation from accepted standards of medical practice in diagnosis and treatment. A medical malpractice panel determined, pursuant to R. 4:21-5(e), that there were no deviations from accepted standards of medical practice and, accordingly, that the claims of medical malpractice were not based on reasonable medical probability. Since the findings and determination of the panel were unanimous, they were admissible in evidence at the trial  but on November 12, 1982 a jury returned a verdict for plaintiffs and awarded the child $475,000 and the parents $225,000. The judgment entered January 17, 1983 included prejudgment interest of $159,913.30 and $75,750.00, respectively, on the child's and parents' damages awards. R. 4:42-11.
After denial of the usual motions for a new trial and judgment notwithstanding the verdict, defendant filed an appeal with the Appellate Division. Pending appeal and during post-trial settlement discussions, counsel filed the within R. 1:21-7(f) application. A supporting affidavit detailed almost 800 hours of legal effort in pretrial preparation and proceedings, a difficult six-day trial, and an outstanding result obtained by an attorney who is a recognized expert in the medical malpractice area. At a February 25, 1983 hearing and by affidavits filed with the application, the parents fully supported the increased fee application. This concurrence is entitled to consideration but is not controlling. Murphy v. Mooresville Mills, 132 N.J. Super. 197, 200 (App.Div. 1975). Counsel and plaintiffs were *488 advised that the situation was similar to other cases approving an increased multiplier of 20% instead of 10% under R. 1:21-7(c)(6), such as Merendino v. FMC Corp., 181 N.J. Super. 503 (Law Div. 1981)  but that the application was premature in view of the pending appeal and ongoing settlement negotiations. In short, the child's interest was paramount and approval in advance of final disposition of the case was not proper  in order to guard against any post-trial settlement of the appeal at the expense of the infant's share. If there had been no appeal and post-trial negotiations, the permissible fee under R. 1:21-7(c) would have been calculated on the net aggregate recovery of $693,159.25 (infant's recovery of $475,000, plus parents' recovery of $225,000, less disbursements of $6,840.75). R. 1:21-7(d). And since there was a full trial, the 25% limit on the first $50,000 of recovery would not be applicable. R. 1:21-7(c)(7). The fee calculation would have been as follows:

R. 1:21-7(c) % On Fee
(1) 50 $ 1,000.00 $ 500.00
(2) 40 2,000.00 800.00
(3) 33 1/3 47,000.00 15,666.67
(4) 25 50,000.00 12,500.00
(5) 20 150,000.00 30,000.00
(6) 10 443,159.25 44,315.93
 ___________ ___________
 $693,159.25 $103,782.60
 =========== ===========

If the requested increase from 10% to 20% on recovery over $250,000 were allowed, an extra $44,315.93 would have been approved  for a total attorney's fee of $148,098.53. The risks of reversal on appeal and a verdict in favor of defendant on a retrial were very real, however, and on April 29, 1983 the trial judge approved a "structured" settlement of the case on the following basis: $275,000 cash "up front," with two-thirds allocated to the infant and one-third to the parents after payment of counsel fees and disbursements, together with guaranteed annuity and balloon payments over a 20-year period and in the *489 same two-thirds to one-third ratio between the child and the parents.
The allocation of all benefits of the structured settlement is in the approximate ratio of the jury verdicts. The total payout over 20 years will be $663,920, but the actual present cost to the insurance carrier was stated by counsel for the defendant to be $200,208. The payments will be as follows:

Payments Total Infant's Share Parents' Share
$683 a month for 20 years, $683. a Mo. $455.33 or $227.67 or
 with total payout of $ 163,920.00 $109,279.20 $ 54,640.80
Balloon payment 4/29/88 25,000.00 16,666.67 8,333.33
 " " 4/29/93 75,000.00 50,000.00 25,000.00
 " " 4/29/98 150,000.00 100,000.00 50,000.00
 " " 4/29/03 250,000.00 166,666.67 83,333.33
 ____________ ___________ ___________
Grand totals $ 663,920.00 $442,612.54 $221,307.46
 ============ =========== ===========

The $275,000 immediate cash payment, plus the total annuity and balloon payments of $663,920, add up to $938,920, or approximately the same as the total $935,663.30 verdicts plus prejudgment interest set forth above ($475,000 + $159,913.30 + $225,000 + $75,750). The cost to defendant's carrier is only $475,208 (cash of $275,000 + cost of annuities of $200,208) and this was obviously its incentive to drop the appeal and possible retrial. Plaintiffs' incentives include the finality of the litigation and tax advantages that offset a considerable portion of the difference in the present value of the trial judgment and the present value of the structured settlement package. The prejudgment interest on the verdicts and any future earnings on the net aggregate recovery after counsel fees and disbursements would be subject to federal and state income taxes. None of the payments under the structured settlement are believed to be subject to such taxes. Merendino, supra at 507. Since the total actual cost of the package, or $475,208 less disbursements of $6,840.75 (and being $468,367.25 net aggregate recovery) is the basis upon which the allowable counsel fee application is made *490 (Merendino, supra, at 509-510 and R. 1:21-7(d)), the calculation is as follows:

R. 1:21-7(c) % On Fee
(1) 50 $ 1,000.00 $ 500.00
(2) 40 2,000.00 800.00
(3) 33 1/3 47,000.00 15,666.67
(4) 25 50,000.00 12,500.00
(5) 20 150,000.00 30,000.00
(6) 10 218,367.25 21,836.73
 ___________ ___________
 $468,367.25 $ 81,303.40
 =========== ===========

The approved increase of the 10% portion of the fee to 20% amounts to $21,836.73, so that the total allowed attorney's fee is $103,140.13[1]. While it is true that this total is approximately the same as the amount allowable under R. 1:21-7(c) on the original verdict as noted above, the court would also have allowed the extra 10% in that instance  or an additional $44,315.93. The attorney as well as the clients participated in the concessions made to avoid the risks of the appeal, and the maximum aggregate marginal benefit has been obtained for both. Merendino, supra at 512-515.
The submitted order has been completed in accordance with the foregoing, and counsel should file copies of all papers with the Administrative Office of the Courts in accordance with R. 1:21-7(f).
NOTES
[1] Deducting the $103,140.13 counsel fee and $6,840.75 disbursements from the up-front cash of $275,000 leaves $165,019.12, which is allocated $110,012.75 to the infant and $55,006.37 to the parents. The child's share, up to the maximum FDIC insured amount (presently $100,000) will be placed in the Bergen County Surrogate's Intermingled Account that, to October 1, 1983 earns interest at 12.25% compounded daily for an effective annual yield of 13.22%.