598 A.2d 956

MARCIA GOODMAN, AS ADMINISTRATRIX AD PROSEQUENDUM AND GENERAL ADMINISTRATRIX OF THE ESTATE OF DIEDRE JEAN GOODMAN AND MARCIA GOODMAN, INDIVIDUALLY, PLAINTIFFS, v. NEWARK BETH ISRAEL MEDICAL CENTER, DR. TORRES, DR. A.Y. CAMPBELL, DR. KAPPY, DR. REAVIS, DR. ROSARIO, DR. A.M. CAMPBELL, DR. ABDUL SAMADY, DR. ELLRICK MURRAY, DR. MITCHELL MOE, NURSE LESLIE LOE, NURSE PAT POE, AND NURSE SARA SOE, JOINTLY AND SEVERALLY, DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided August 20, 1991.

*Oliver Lofton* for plaintiffs (*Lofton & Wolfe*, attorneys; *James H. Wolfe, III*, on the brief).

*Peter A. Greene* for defendants Newark Beth Israel Medical Center, Dr. Torres, Dr. A.Y. Campbell, Dr. Kappy, Dr. Reavis and Dr. A.M. Campbell (*Feuerstein, Sachs, Maitlin & Fleming*, attorneys).

*John North* for defendant Dr. Abdul Samady (*MacKenzie, Welt, Duane, Maher & North*, attorneys).

*Susan R. Leib* for defendant Dr. Ellrick Murray (*Mortenson & Pomeroy*, attorneys; *Stephen O. Mortenson*, of counsel).

VILLANUEVA, J.S.C.

The issue in defendants' motion to bar certain expert testimony in this wrongful death action is whether evidence of the pecuniary losses of decedent's mother is admissible at the trial when the decedent is survived by a daughter.

The court holds that, pursuant to *N.J.S.A.* 2A:31–4 (the wrongful death statute) and *N.J.S.A.* 3B:5–4 (the intestate succession statute), plaintiff, as administratrix *ad prosequendum*, may recover only the pecuniary losses suffered by the daughter of the decedent, who is her sole beneficiary. Therefore, testimony as to the pecuniary losses of decedent's mother is barred.

I.

Diedre Jean Goodman, a 26–year–old unmarried female, died on April 14, 1987, allegedly as a result of medical malpractice, leaving her daughter, Bianca Goodman, age three, and her mother, Marcia Goodman.

Marcia Goodman, who filed this wrongful death action as administratrix *ad prosequendum* of the estate of Diedre Jean Goodman, served defendants with an economic loss report by Frank D. Tinari, Ph.D., estimating pecuniary losses from the

death of Diedre Goodman at $783,818. These include $286,253 in losses to the daughter and $497,565 in losses to the mother.

Defendants move, *in limine*, to bar testimony of plaintiff's economic expert concerning "Advice, Guidance and Counsel Services to Decedent's Mother" and "Companionship Services to Decedent's Mother" as set forth in his report.

## II.

Defendants claim that *N.J.S.A.* 2A:31-4 and *N.J.S.A.* 3B:5-4 make it clear that Bianca Goodman is the sole beneficiary under the wrongful death statute. Therefore, defendants contend that any pecuniary losses of decedent's mother are irrelevant and any reference thereto should not be admissible at the trial.

Plaintiff relies upon *Eyoma v. Falco*, 247 *N.J.Super.* 435, 589 *A.*2d 653 (App.Div.1991), as originally reported, to refute defendant's position because the trial court therein allowed testimony by the decedent's mother regarding her pecuniary losses as a result of her son's death despite the fact that he was also survived by two daughters, ages six and two. Plaintiff claims, therefore, that the original *Eyoma* opinion impliedly permits wrongful death claims on behalf of both an issue and a dependent parent who survived the decedent.

Plaintiff also claims that the order of distribution in the intestate succession statute, *N.J.S.A.* 3B:5-4, is neither controlling nor determinative in a wrongful death action. Plaintiff, relying on *Jurman v. Samuel Braen, Inc.*, 47 *N.J.* 586, 222 *A.*2d 78 (1966), contends that, although the statute of distribution identifies the beneficiaries under the wrongful death statute, the beneficiaries take by virtue of the wrongful death statute, *N.J.S.A.* 2A:31-4, which "gives the court wide discretion in arriving at a fair and equitable apportionment geared to a particular family situation and the individuals involved." *Id.* at 602, 222 *A.*2d 78. However, the court held that the proper measure of damages for a wrongful death is the pecuniary loss of the beneficiaries who were decedent's dependents *and* his

next of kin, who would have been solely entitled to take his personal property had he died intestate. *Ibid.*

Plaintiff contends that she, as mother of the decedent, is a member of the class of persons entitled to take under *N.J.S.A.* 3B:5–4, and, therefore, lay and expert testimony is admissible regarding the companionship, advice, guidance and counsel that decedent would have provided her and the quantifiable pecuniary losses related thereto.

## III.

Plaintiff misconstrues the interrelationship of the intestate succession and wrongful death statutes. In addition, the *Eyoma* decision as modified is not, as she claims, contrary to defendants' interpretation of these statutes.

Plaintiff's action for alleged wrongful death of his son, brought as administrator *ad prosequendum* was an action for the exclusive benefit of persons entitled to take intestate property of decedent, and administrator *ad prosequendum* was merely a nominal representative of the class mentioned, since he acts as fiduciary for the general administrator who was charged with distribution of the funds recovered. *Kasharian v. Wilentz*, 93 *N.J.Super.* 479, 481, 226 *A.*2d 437 (App.Div.1967).

*N.J.S.A.* 2A:31–4 states:

The amount recovered in proceedings under this chapter shall be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take the same. If any of the persons so entitled were dependent on the decedent at his death, they shall take the same as though they were sole persons so entitled, in such proportions, as shall be determined by the court without a jury, and as will result in a fair and equitable apportionment of the amount recovered, among them, taking into account in such determination, but not limited necessarily thereby, the age of the dependents, their physical and mental condition, the necessity or desirability of providing them with educational facilities, their financial condition and the availability to them of other means of support, present and future, and any other relevant factors which will contribute to a fair and equitable apportionment of the amount recovered.

*N.J.S.A.* 3B:5–4 states in relevant part:

The part of the intestate estate not passing to the surviving spouse under *N.J.S.A.* 33:5–3, or the entire intestate estate if there is no surviving spouse, passes as follows:

a. To the issue of the decedent; ...

b. If there is no surviving issue, to his parent or parents equally....

The intestate succession law clearly states that when a person dies leaving no surviving spouse but issue, then the entire estate passes to the issue. Under *N.J.S.A.* 2A:31–4, distribution of the proceeds of a wrongful death award shall be for the exclusive benefit of persons entitled to take under intestate succession. *N.J.S.A.* 2A:31–4 then permits "an equitable apportionment of the amount recovered" to be made "by the court without a jury" depending on actual dependency but *only* among those initially "so entitled" to take under intestate succession. In this case it would be only the issue of the decedent.

The jury in a wrongful death action determines the damages for "pecuniary injuries resulting from such death ... to the persons entitled to any intestate personal property of the decedent." *N.J.S.A.* 2A:31–5. *Green v. Bittner*, 85 *N.J.* 1, 4, 424 *A.*2d 210 (1980).

"Once the lump-sum recovery is obtained, whether by way of settlement or judgment, the trial court must hold a hearing without a jury in order to apportion the fund equitably among the members of the class entitled to share in it. *N.J.S.A.* 2A:31–4." *McMullen v. Maryland Cas. Co.*, 127 *N.J.Super.* 231, 238, 317 *A.*2d 75 (App.Div.1974), aff'd *sub nom. McMullen v. Conforti & Eisele, Inc.*, 67 *N.J.* 416, 341 *A.*2d 334 (1975) (citing *Jurman v. Samuel Braen, Inc.*, *supra*, 47 *N.J.* at 598, 222 *A.*2d 78; *Suarez v. Berg*, 117 *N.J.Super.* 456, 285 *A.*2d 68 (App.Div.1971)); *Eyoma v. Falco*, *supra*, 247 *N.J.Super.* at 455, 589 *A.*2d 653.

Contrary to plaintiff's interpretation, the entire class of beneficiaries is not reopened; recovery is simply apportioned among a more narrow subclass—those beneficiaries who were dependent on the decedent.

The wrongful death statute was analyzed in *Wolff v. Mercer Med. Ctr.*, 220 *N.J.Super.* 360, 532 *A.*2d 265 (App.Div.1987), wherein the court stated:

> The determination of who can share in the distribution of the recovery in a wrongful death action such as this requires a two-step procedure. The first requires the determination of such category of survivors who would take personal property through intestate succession. Thereafter, a second category is formed from the above group who were dependents of the decedent. In the event there are any in the second category, *i.e.*, dependents, they take to the exclusion of the survivors in the first group. [at 364, 532 *A.*2d 265]

*Wolff* involved the proper method of distribution of the net proceeds of a wrongful death action among the surviving spouse and three children of the decedent. The court held that it was "uncontested that the category of survivors who take personal property consists of decedent's surviving spouse and his three surviving children." *Ibid.* It was only then that the court moved on to the question of who was dependent upon the decedent and to what extent.

In *Jurman v. Samuel Braen, Inc., supra,* the court found that *N.J.S.A.* 2A:31–4 permits distribution, not among all dependents, but only among *"all* dependent beneficiaries" under intestate succession. 47 *N.J.* at 602, 222 *A.*2d 78. The court further stated:

> In effect we think this second sentence of section 4 has to be read as a proviso to the first sentence, which generally directs division only among 'the persons entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take the same.' [*Id.* at 601, 222 *A.*2d 78]

Hence, plaintiff's contention that *Jurman* stands for the proposition that the wrongful death statute, *N.J.S.A.* 2A:31–4, gives the court "wide discretion in arriving at a fair and equitable apportionment geared to a particular family situation" is true, but only to the extent that these family members are eligible beneficiaries pursuant to the intestate succession statute. *Id.* at 602, 222 *A.*2d 78.

Similarly, in *Schmoll v. Creecy*, 54 *N.J.* 194, 254 *A.*2d 525 (1969), the Court began its discussion of the wrongful death statute by stating:

> Our wrongful death statute has always identified the beneficiaries of the action by referring to the statute controlling distribution of intestate personalty.... We are thus referred to the statutes relating to the distribution of intestate personalty to ascertain the beneficiaries of a death action. [*Id.* at 197–198, 254 A.2d 525]

Although *Green v. Bittner, supra,* does enunciate certain factors to be taken into consideration in determining a pecuniary award in a wrongful death action, such as loss of companionship, counsel and comfort, the case involved an eligible beneficiary—the parent of a decedent who left no spouse or issue.

See also *Lovely v. Rahway Hospital,* 227 *N.J.Super.* 614, 548 *A.*2d 242 (Law Div.1988) wherein the court, relying upon *Green v. Bittner, supra,* held that the decedent's mother "was partially dependent upon her son for the services, companionship and advice he afforded her during his lifetime." *Id.* at 619, 548 A.2d 242. However, once again, the *Lovely* court was not faced with a question of ineligible claimants; the decedent was a minor who left no spouse or issue.

In another case involving a dispute between the mother and estranged wife of the decedent regarding the proceeds of a wrongful death settlement, *Contento v. Contento,* 210 *N.J.Super.* 601, 510 *A.*2d 295 (Ch.Div.1986), the mother was awarded a portion of the settlement solely because the attorney handling the litigation was successful in utilizing the theory of *Green v. Bittner, supra,* on behalf of the mother to induce a settlement. The court, however, acknowledged that the mother's cause of action "would not have been successful had the litigation been pursued." *Id.* at 609, 510 *A.*2d 295.

In *Eyoma v. Falco, supra,* the mother of the decedent filed a wrongful death action. Decedent was survived by his two daughters and his mother. Decedent's mother testified that her son sent money or things of value to her and his daughter. The mother also testified that her son remained in contact with her through several telephone calls per week. She referred to decedent as her "backbone." Even though the trial court found

no merit to the claim of decedent's mother for pecuniary damages, her testimony was permitted at trial.

The Appellate Division found that "even if the jury did not find any merit to decedent's mother's claim for loss of monetary support, she, nonetheless, clearly suffered some pecuniary loss considering the close relationship she enjoyed with her son, their continuous and frequent communication, and the advice in important matters which was rendered to her by decedent." 247 *N.J.Super.* at 455–456, 589 *A*.2d 653. However, this opinion was modified:

> Decedent was survived by two children; *thus, his mother does not appear to be an eligible intestate beneficiary pursuant to N.J.S.A. 3B:5–4.* Nevertheless, her presence in the case was not challenged, and the jury heard testimony regarding the loss suffered by the mother as a result of decedent's death. Because the propriety of admitting that testimony into evidence has been neither raised nor briefed, we do not address that issue on this appeal. See *N.J.S.A.* 2A:31–5 regarding assessment of damages by jury. [*Id.* at 456, n. 1, 589 *A*.2d 653; emphasis supplied]

In the case at hand the propriety of admitting this type of testimony is challenged. This court finds there is no New Jersey case wherein a court, over objection, has permitted a jury to consider wrongful death damages to both a child and parent of a decedent.

The modification by the Appellate Division of the *Eyoma* decision, made after these motions were filed, regarding the mother's pecuniary loss stated that "his mother does not appear to be an eligible intestate beneficiary pursuant to *N.J.S.A.* 3B:5–4." *Ibid.* This statement supports barring testimony regarding losses of the decedent's mother herein.

### IV.

The motions to bar expert testimony as to the pecuniary losses of decedent's mother are granted.